UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK NALI,

    Plaintiff,

v.                                                                 Case No. 2:10-cv-29
                                                                Honorable R. Allan Edgar

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

    Defendants.

_____/

**<u>OPINION</u>**

        This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff's complaint was initially filed in the Eastern District Of Michigan and transferred to this Court. Plaintiff was granted leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint because the Michigan Department of Corrections is immune from suit and Plaintiff fails to state a claim against Defendants (unknown) O'Brien, P. Caruso, G. Pramstaller, C. Hutchinson, J. Rocco, J. Ekman,

J. White, (unknown) Quigley, J. Gouine, (unknown) Usitala, (unknown) Young, (unknown) Yon, L. Metrish, (unknown) Kellett and (unknown) Beaudoin. The Court will serve the amended complaint against Defendant (unknown) Buda.

## Discussion

I. Factual allegations

Plaintiff is a former state inmate. In his *pro se* amended complaint, he sues the Michigan Department of Corrections (MDOC), Correctional Medical Services, Inc. (CMS)[1], MDOC Director Patricia Caruso, MDOC Medical Director G. Pramstaller, CMS Medical Director C. Hutchinson and the following Ojibway Correctional Facility (OCF) employees: Dr. J. Rocco, Nurse J. Ekman, Corrections Officers (unknown) Buda and (unknown) Kellett, Deputy Warden (unknown) Quigley, Assistant Deputy Wardens (unknown) Usitala and (unknown) Young, Pharmacy Technician J. Gouine and Hearings Investigator (unknown) Yon. Plaintiff also sues the following MDOC employees: Warden L. Metrish, Warden J. White, Corrections Officer (unknown) Beaudoin and Hearings Officer (unknown) O'Brien.

Plaintiff states that he received a knee injury while he was housed at the Kinross Correctional Facility in March 2006. He claims that he also suffers from back and leg pain due to the compression of his sciatic nerve. Apparently, Plaintiff cannot walk without some sort of assistance. Plaintiff's amended complaint concerns a wide variety of conduct, most of which stem from his physical ailments.

---

[1] The Eastern District of Michigan dismissed Plaintiff's action against CMS before Plaintiff's case was transferred to the Western District of Michigan.

Plaintiff was housed at Hiawatha Correctional Facility in November 2006. On November 9, 2006, Plaintiff attempted to go to the bathroom but fell to the floor due to excruciating pain in his lower back. Health care told Plaintiff to return to his bunk bed and rest. Plaintiff needed the help of several inmates to return to his bunk bed. A couple hours later, Plaintiff was transported by wheelchair to the control center to be transferred to the Straits Correctional Facility. Plaintiff complains that Warden Metrish authorized Plaintiff to be transferred even though she knew of the injuries Plaintiff received that morning. Plaintiff also complains that the transfer van did not have proper accommodations for Plaintiff's injuries. When Plaintiff arrived at the Straits Correctional Facility, Defendant Beaudoin refused to obtain a wheelchair for Plaintiff and forced Plaintiff to struggle to the lobby as Plaintiff screamed in pain and dragged his injured leg.

Plaintiff was later transferred to OCF. While at OCF, Plaintiff complains that Defendants Caruso, Rocco, Ekman, Pramstaller and Quigley failed to provide handicap accommodations in the shower and bathroom. Plaintiff also argues that Defendants White, Caruso, Quigley, Usitalo and Young were negligent for failing to provide him with the necessary accommodations to allow him to take showers and to use the bathroom without incurring any injuries. Plaintiff sent letters to Defendants Caruso and Pramstaller regarding the lack of accommodations in the shower and bathroom for handicapped prisoners. On July 4, 2007, Plaintiff states that he fell in the shower when his knee collapsed because of the lack of handicap accommodations. Plaintiff apparently twisted his back during that incident and had to be in a wheelchair for five days.

For his knee injury, Plaintiff repeatedly requested that Defendants Rocco, Ekman, Caruso, Pramstaller, and Hutchinson refer Plaintiff to a specialist to examine Plaintiff's knee but

Defendants refused. Plaintiff was eventually diagnosed with an anterior cruciate ligament sprain. However, after being released from prison, an orthopedic surgeon examined Plaintiff's knee and determined that Plaintiff suffered a ruptured quadricep tendon. Due to his alleged mis-diagnosis, Plaintiff complains that his injuries are now permanent. Plaintiff further alleges that Defendants Caruso, Ekman, Rocco, Pramstaller and White were grossly negligent in their diagnosis and treatment of Plaintiff so that he is now permanently disabled.

In March 2007, Plaintiff complains that Defendant Buda harassed him about his medical condition in violation of MICH. COMP. LAWS § 19.142. Buda told Plaintiff that there was nothing wrong with him. Buda also allegedly requested that health care take away Plaintiff's crutches despite the fact that Plaintiff needed assistance to get around. On March 26, 2007, Plaintiff states that Buda conspired with another officer to write a false misconduct against Plaintiff. Apparently, Buda told Plaintiff that he was aware of all the "chicken-shit grievances" that Plaintiff had written. (Am. Compl., Page ID #53, docket #16.)

In October 2007, Plaintiff complains that Defendant Kellett stated that Plaintiff was a child molester in the chow hall in front of several inmates. Plaintiff claims that prison officers will use this tactic to get other inmates to physically harm certain inmates. Plaintiff states that Defendant Kellett's statement was intended to harass him. He argues that Defendant Kellett's statement was slander *per se*.

Plaintiff's next claim concerns a major misconduct ticket. On October 15, 2007, Pharmacy Technician Gouine issued a major misconduct ticket to Plaintiff for substance abuse. Plaintiff claims that Defendant Gouine violated his due process rights because she did not inform Plaintiff "of what specific act he committed, and provided no evidence to support her decision . . .

-4-

." (Am. Compl., Page ID #54, docket #16.) Plaintiff further states that Defendant Yon violated his due process rights by failing to investigate his misconduct ticket. After questioning Gouine outside of Plaintiff's presence, Hearings Officer O'Brien found Plaintiff guilty of the misconduct. Plaintiff states that Defendants Gouine, O'Brien and Yon violated MDOC policies in issuing, reviewing and investigating his major misconduct ticket and in conducting his major misconduct hearing. Plaintiff finally claims that Defendants Gouine, O'Brien and Yon were grossly negligent in issuing Plaintiff's misconduct ticket.

Plaintiff also complains that Defendant Gouine retaliated against him by writing the major misconduct ticket because Plaintiff told Gouine that he would not accept any medication from her unless Plaintiff signed for the medication. Plaintiff apparently had been denied medication in the past but Gouine had insisted that she had given the medication to Plaintiff. Plaintiff claims that he has a First Amendment and Fourteenth Amendment right to sign for all of his medication.

Plaintiff requests injunctive relief and compensatory and punitive damages.

II.     Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff complains that (1) Pharmacy Technician Gouine wrongly issued a major misconduct ticket against Plaintiff for substance abuse, (2) Hearings Investigator Yon failed to investigate the misconduct ticket, and (3) Hearings Officer O'Brien[2] failed to inform Plaintiff "of what specific act he committed, and provided no evidence to support her decision . . . ." (Compl.,

---

[2] Defendant O'Brien is a hearings officer. As such, any claim for damages against Defendant O'Brien is barred by judicial immunity. The Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's damages claim against Defendant O'Brien shall be dismissed on immunity grounds.

Page ID #54, docket #16.)

Plaintiff claims that the major misconduct charges against him were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 335 F. App'x at 912; *accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011. In the absence of a demonstrated liberty interest, plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due process claims against Defendants Gouine, Yon and O'Brien fail to state a claim.

Plaintiff also complains that Defendants Gouine, Yon and O'Brien violated MDOC policies in issuing his misconduct ticket. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v.*

*Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's amended complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

B. **Eighth Amendment**

Plaintiff asserts the following Eighth Amendment claims: (1) Defendants Caruso, Rocco, Ekman, Pramstaller and Quigley failed to provide handicap accommodations in the shower and bathroom so that Plaintiff injured himself, (2) Defendants White, Caruso, Quigley, Usitalo and Young negligently failed to provide Plaintiff with the necessary accommodations for the shower and bathroom, (3) Defendants failed to provide necessary accommodations in the transport van for handicap prisoners, (4) Defendants Rocco, Ekman, Caruso, Pramstaller and Hutchinson refused to allow a specialist to examine Plaintiff's knee, (5) Defendant Beaudoin forced Plaintiff to walk from the transport van to the lobby of Straits Correctional Facility although Plaintiff was in great pain

from an earlier injury, and (6) Defendant Metrish authorized Plaintiff to be transferred to Straits Correctional Facility on November 9, 2006 even though she knew of Plaintiff's back injury.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for the prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. McKinney,* 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

1. Health and Safety

Several of Plaintiff's claims concern his health and safety. An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods*

*v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4).

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*,

No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Plaintiff first complains of the MDOC's lack of handicap accommodations. Specifically, Plaintiff argues that Defendants Caruso, Rocco, Ekman, Pramstaller and Quigley did not provide him with handicap accommodations for the bathroom and shower. Plaintiff claims that he would not have fallen on July 4, 2007 at OCF if he would have had those accommodations. Plaintiff does not have a right to have Defendants accommodate him to the extent he seeks to be accommodated. *See Staple v. Va. Dep't of Corrs.,* 904 F. Supp. 487, (E.D. Va. 1995) (finding no support for a Plaintiff's Eighth Amendment claim that he has a constitutional right to have defendants accommodate him with easier access to the shower, bathroom and whirlpool.) Further, Defendants gave Plaintiff the opportunity to move to a prison unit with handicap accommodations. In a grievance, Plaintiff stated that Defendants wanted to move him to a different unit that had a handicap chair in the shower. (*See* MDOC Grievance Form No. OCF-07-070-0827-12e, Page ID #77, docket #17-1.) However, Plaintiff, who is allergic to smoke, refused because the cell was in a smoking unit. Plaintiff's grievance was eventually denied, as follows:

> The patient is incorrect regarding smoking units. All state buildings are smoke free. The unit that was suggested he be moved has a handicap chair in the shower. He declined the move. He was provided pain medication and a muscle relaxer to ease his discomfort. All care is appropriate.

(*See id.*) Plaintiff was given the opportunity to change units, and, thus, receive handicap accommodations. Plaintiff refused because the unit was a smoking unit. The Court notes that MDOC policy prohibits smoking by offenders and MDOC employees inside all MDOC buildings

and within 100 feet of any entrance to those buildings. MICH. DEP'T. OF CORR., Policy Directive 01.03.140, ¶ H (effective Mar. 14, 2011). Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Caruso, Rocco, Ekman, Pramstaller and Quigley.

Plaintiff also fails to state an Eighth Amendment claim for negligence against Defendants White, Caruso, Quigley, Usitalo and Young for failing to provide him with handicap accommodations in the shower and bathroom at OCF. Because the deliberate indifference standard requires "a state of mind more blameworthy than negligence," *Farmer,* 511 U.S. at 839, and this Court previously found that failing to provide Plaintiff with handicap accommodations did not rise to an Eighth Amendment violation, Plaintiff's claim fails. *See Payton v. Epps,* 82 F. App'x 399, 399 (5th Cir. 2003) (a negligence claim that being denied "slip guards and guard rails" in a prison shower is not actionable under 42 U.S.C. § 1983.)

Plaintiff next complains that Defendants failed to provide handicap accommodations in the transport van for his transfer from Hiawatha Correctional Facility to Straits Correctional Facility. Plaintiff, however, did not elaborate on what type of accommodations he believes should have been available in the transport van. Plaintiff does not complain that Defendants failed to fasten his seatbelt or drove recklessly. *See, e.g., Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1039 (8th Cir. 2004) (holding that allegations that an officer refused to fasten a prisoner's seatbelt and then deliberately drove recklessly was sufficient to state a claim under the Eighth Amendment); *but see Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902 (8th Cir. 1999) (placement of unsecured, wheelchair-restricted quadriplegic pretrial detainee in a van does not implicate the Eighth Amendment where the driver otherwise was cautious and the accident was not the driver's fault). As a consequence, Plaintiff fails to state an Eighth Amendment claim for Defendants failure to

provide handicap accommodations in the transport van.

Plaintiff's Eighth Amendment claim against Defendant Metrish for transferring him to another prison despite his back injuries is unsupported. Metrish was the warden at Hiawatha Correctional Facility. After Plaintiff's back injury on November 9, 2006, health care at Hiawatha Correctional Facility treated Plaintiff and told Plaintiff to get some rest. Even if Metrish was aware of Plaintiff's injuries, Plaintiff does not allege that health care informed Metrish that Plaintiff could not be transferred to Straits Correctional Facility. Moreover, Plaintiff was being transferred to another correctional facility that could also treat his injuries. Plaintiff therefore fails to allege sufficient facts to support an inference that a substantial risk of serious harm existed or that Metrish appreciated that risk. Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Metrish.[4]

As for Plaintiff's Eighth Amendment claim against Defendant Beaudoin, Plaintiff claims that Beaudoin, on November 9, 2006, forced Plaintiff to walk from the transport van to the lobby of Straits Correctional Facility even though he was in great pain from a back injury. Plaintiff,

---

[4]Plaintiff's action against Defendant Metrish is also barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. Plaintiff asserts a claim against Warden Metrish arising in November 2006. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claim accrued in 2006. However, he did not file his original complaint until 2010, well past Michigan's three-year limit.

however, does not allege that Defendant Beaudoin was aware of Plaintiff's injury. Defendant Beaudoin had just met Plaintiff when he arrived at the Straits Correctional Facility. Plaintiff therefore fails to allege sufficient facts to support that Beaudoin had a sufficiently culpable state of mind. *See Farmer,* 511 U.S. at 834. Further, Plaintiff does not allege that he was denied medical treatment once Plaintiff arrived at Straits Correctional Facility. As a consequence, Plaintiff fails to state an Eighth Amendment claim against Defendant Beaudoin.

2. Medical Care

Plaintiff argues that Defendants Rocco, Ekman, Caruso, Pramstaller and Hutchinson refused to allow a specialist to examine Plaintiff's knee so that his knee injury was mis-diagnosed. In prison, Plaintiff was diagnosed with an anterior cruciate ligament sprain. Once Plaintiff was released from prison, Plaintiff learned that he had suffered a ruptured quadricep tendon from a specialist.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103-04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As with other Eighth Amendment claims, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo*

*County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the mis-diagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No.

96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). In his amended complaint, Plaintiff does not allege that Defendants failed to treat his knee injury. Rather, Plaintiff claims that Defendants had a difference in medical opinion as to the extent of his injury.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Defendants Rocco, Ekman, Caruso, Pramstaller and Hutchinson for the alleged misdiagnosis of his knee injury.

C. **First Amendment**

Plaintiff argues that Defendant Gouine retaliated against him by filing a misconduct ticket because he told Gouine that he needed to sign for all of his medication. Plaintiff also claims that Defendant Buda retaliated against him by harassing him for filing grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order

to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim against Defendant Gouine fails because Plaintiff has not established that he was engaged in protected conduct. Plaintiff has not alleged that signing for his medication is a protected activity under the First Amendment, nor could he. Plaintiff's First Amendment claim against Defendant Gouine therefore fails to state a claim.

At this stage in the case, the Court concludes that Plaintiff has sufficiently alleged a First Amendment retaliation claim against Defendant Buda. The Court will also serve Plaintiff's state law claims against Defendant Buda.

D.   **State Law Slander Claim**

In his complaint, Plaintiff alleges a slander *per se* claim against Defendant Kellett for calling Plaintiff a child molester. Plaintiff's claim is a state law tort claim. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. 28 U.S.C. § 1367(a) provides:

[I]n any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ....

28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), however, the district court may refuse to exercise supplemental jurisdiction over state claims when a court has dismissed all the federal claims set forth in the complaint. Because this Court is dismissing all of Plaintiff's federal claims except for a First Amendment retaliation claim against Defendant Buda, the Court declines to exercise supplemental jurisdiction to hear Plaintiff's state tort claim against Defendant Kellett. As such, Plaintiff's state law slander claim will be dismissed without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that the Michigan Department of Corrections is immune from suit and Defendants ((unknown) O'Brien, P. Caruso, G. Pramstaller, C. Hutchinson, J. Rocco, J. Ekman, J. White, (unknown) Quigley, J. Gouine, (unknown) Usitala, (unknown) Young, (unknown) Yon, L. Metrish, (unknown) Kellett and (unknown) Beaudoin will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). The Court will serve the amended complaint against Defendant (unknown) Buda.

An Order consistent with this Opinion will be entered.

Dated: April 27, 2011.

                                                */s/ R. Allan Edgar*
                                                R. ALLAN EDGAR
                                      UNITED STATES DISTRICT JUDGE